**WICKHAM CONTRACTING CO., INC., Appellant,**

v.

**Dennis J. FISCHER, Acting Administrator, General Services Administration, Appellee.**

No. 93–1146.

United States Court of Appeals, Federal Circuit.

Jan. 6, 1994.

Peter L. Agovino, Goldberg & Connolly, Rockville Centre, NY, argued, for appellant. With him on the brief was Henry L. Goldberg.

Lauren S. Moore, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued, for appellee. With her on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director.

Before RICH, MICHEL and CLEVENGER, Circuit Judges.

MICHEL, Circuit Judge.

Wickham Contracting Company appeals from a decision of the General Services Administration Board of Contract Appeals (Board), denying Wickham's claim for an equitable adjustment for overhead expenses incurred under a contract with the General Services Administration (GSA) as a result of GSA-imposed delays. *Wickham Contracting Co.*, GSBCA No. 8675, 92–3 BCA ¶ 25,040, 1992 WL 88326 (Apr. 29, 1992). First, the Board held that the *Eichleay* formula is the proper method for calculating unabsorbed home office overhead when a contractor otherwise satisfies the *Eichleay* requirements.[1] Second, the Board would not allow Wickham to expand the overhead pool by including direct costs. Third, the Board rejected Wickham's claim to an increased delay period because the contractor had not shown that it would have finished by the projected early date. Fourth, the Board held that Wickham is not entitled to interest for use of its equity capital or borrowed funds. We affirm the decision of the Board, upholding its ruling on each of these four issues, again presented here. Regarding the *Eichleay* formula, we hold it is the only proper method of calculating unabsorbed home office overhead. No other formula may be used.

## I. BACKGROUND

On July 28, 1977, Wickham entered into a contract with GSA to renovate the Federal Post Office and Courthouse in Albany, New York, for the sum of $2,968,000. The contract allowed 365 days from the notice to proceed to perform the work which was due to be completed on August 15, 1978. Early in the renovation process, GSA became concerned about structural problems with the building and ordered many delays in the work. The parties agree that, due to GSA-imposed delays, the work was not substantially complete until April 10, 1981, 969 days after the contracted date. Many of Wickham's claims against the government for additional costs due to such delays have been

---

1. *Eichleay Corp.*, ASBCA No. 5183, 60–2 BCA ¶ 2688, 1960 WL 538 (July 29, 1960), *aff'd on*   *reconsid.*, 61–1 BCA ¶ 2894, 1960 WL 684 (1960).

settled. However, certain costs associated with home office overhead have not.

Wickham's home office staff during the renovation work consisted of the president, a construction engineer, the project manager, and three secretaries. In addition to the Albany project, Wickham performed only two other major contracts during the same time frame—the West Point project and the Foley Square project. Both of these projects were managed mainly on site while the Albany project was managed mainly from the home office.

In June 1986, the contracting officer awarded Wickham an additional $333,084 on its claim for unabsorbed home office overhead due to the delay, based on the *Eichleay* formula.[2] Before the Board, Wickham argued that, for three reasons, it was due a larger amount for the unabsorbed home office overhead. Wickham complained that the percentage of the home office overhead pool allocated to the Albany contract based on the *Eichleay* formula, approximately 34%, was too low and did not fairly compensate Wickham for its overhead expenses. The contractor argued that it was entitled to be reimbursed for 80% of its overhead expenses incurred during the delay period because 80% of its home office activity and, therefore, 80% of its home office overhead expense was devoted to the Albany contract during that time frame. Wickham made the argument first to the contracting officer, then to the Board.

On appeal to us, Wickham repeatedly states that the 80% figure is undisputed. However, the government points out that Wickham did not keep current books or records which could document the 80% figure and that Wickham did not develop that figure until January 1985. The record supports the government's assertions. Therefore, we conclude the figure is disputed.

The Board did not make a clear finding as to whether Wickham actually proved that 80% of its home office activity was devoted to the Albany contract. Instead, the Board rejected Wickham's theory of recovery on the basis that unabsorbed overhead is always calculated according to the *Eichleay* formula when a contractor meets the *Eichleay* requirements after government-imposed delay. The Board applied the *Eichleay* formula based on the notion that it is a theoretical construct of the amount of unabsorbed overhead caused by the contract delay and, therefore, the actual amount of overhead allegedly caused by the contract was not relevant.

The parties agree on many of the components of the overhead pool. The components of the overhead pool to which the Board applied the *Eichleay* formula are general and administrative salaries, rent, insurance, depreciation, hospitalization and medical costs, dues and subscriptions, office expenses, auto and truck maintenance, utilities, plans and specifications, cleaning, protection, taxes and licenses, and officer's salaries. 92–3 BCA ¶ 25,040 at 124,818–19.

Before the Board, however, Wickham also argued that the contracting officer wrongly excluded several specific field costs from the overhead pool. The field costs are for travel and business meetings, telephones, professional fees, union welfare benefits, payroll taxes and equipment rental. Their inclusion would increase the amount paid to Wickham under either the *Eichleay* formula or Wickham's allocation figure of 80%. The Board, however, found that as direct, not overhead costs, they may not be included in the overhead pool.

In addition, Wickham argued that the compensable delay period was actually 1029 days rather than the 969 days admitted by GSA. The longer delay would entitle Wickham to a larger payment under either the *Eichleay* formula or its preferred figure of 80%. Wickham measures the delay from its projected early finish date of June 15, 1978, suggested by the critical path method schedule, rather than the finish date of August 15, 1978, set by the contract. The Board found that Wickham was not entitled to reimbursement based on the longer delay period be-

---

2. Wickham had already been partially compensated for overhead costs because the original contract price included a markup for overhead. In addition, when GSA issued change orders to pay Wickham for additional work, almost all of the orders included a markup of 10% for overhead.

cause it did not prove that it would have finished by the earlier date.

Finally, Wickham sought reimbursement for the cost of use of its equity capital and alleged use of borrowed funds during the delay. The Board rejected this claim also, the former as unallowable and the latter as unproven.

Wickham appealed to this court pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 607(g)(1) (1988). Our jurisdiction rests on that Act and 28 U.S.C. § 1295(a)(10) (1988).

## II. STANDARD OF REVIEW

■ The CDA dictates the standard this court applies in reviewing decisions of agency contract appeal boards. 41 U.S.C. § 609(b). To the extent that Wickham challenges the Board's factual findings, it must show that those findings were either: (1) fraudulent, (2) arbitrary or capricious, (3) so grossly erroneous as to necessarily imply bad faith, or (4) not supported by substantial evidence. *Id.* Even though the record may contain evidence which supports a contrary finding, we will not overturn a board's finding if substantial evidence supports it. *Erickson Air Crane, Inc. v. United States*, 731 F.2d 810, 814 (Fed.Cir.1984). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *United States v. General Elec. Corp.*, 727 F.2d 1567, 1572 (Fed.Cir. 1984). A board's determination on a question of law is reviewed *de novo*, although it is accorded careful consideration due to the board's considerable experience in construing government contracts. *United States v. Lockheed Corp.*, 817 F.2d 1565, 1567 (Fed. Cir.1987).

**3.** The *Eichleay* formula requires three steps: 1) to find allocable contract overhead, multiply the total overhead cost incurred during the contract period times the ratio of billings from the delayed contract to total billings of the firm during the contract period; 2) to get the daily contract overhead rate, divide allocable contract overhead by days of contract performance; and 3) to get the amount recoverable, multiply the daily contract overhead rate times days of government-caused delay. *Capital Elec. Co. v. United States*, 729 F.2d 743, 747 (Fed.Cir.1984).

## III. ANALYSIS

### A. The Eichleay Formula is Exclusive

### 1. Federal Circuit Law on Eichleay

■ The Board used the *Eichleay* formula[3] to calculate the amount of home office overhead costs for which Wickham would be reimbursed due to the GSA-imposed delay. Application of the *Eichleay* formula requires "that compensable delay occurred, and that the contractor could not have taken on any other jobs during the contract period."[4] *C.B.C. Enters., Inc. v. United States*, 978 F.2d 669, 673–74 (Fed.Cir.1992). Government contractors may use the *Eichleay* formula to calculate unabsorbed home office overhead when disruption, delay or suspension caused by the government has made uncertain the length of the performance period of the contract. *Id.* 978 F.2d at 672. The uncertainty often precludes additional jobs.

Suspension or delay of contract performance results in interruption or reduction of the contractor's stream of income from payments for direct costs incurred. This in turn causes an interruption or reduction in payments for overhead, derived as a percentage of direct costs, which is set by the contract. Home office overhead costs continue to accrue during such periods, however, regardless of direct contract activity. Consequently, this decrease in payments for direct costs creates unabsorbed overhead, unless home office workers are laid off or given additional work during such suspension or delay periods. When the period of delay is uncertain and the contractor is required by the government to remain ready to resume performance on short notice (referred to as "standby"), the contractor is effectively prohibited from making reductions in home office staff or

**4.** The parties stipulated that the government caused delay and disruption in Wickham's performance of the GSA contract such that Wickham satisfies the requirements for application of the *Eichleay* formula. GSA admitted to the Board that GSA had caused compensable delay of 969 days. Wickham's witness testified that because of the disruption, it was unable to commit to any additional contract work during the delay and GSA did not dispute this testimony.

facilities or by taking on additional work. *See Capital Elec. Co. v. United States,* 729 F.2d 743, 748 (Fed.Cir.1984) (Friedman, J., concurring) ("[I]t is, ordinarily, not practicable to lay off main office employees during a short and indefinite period of delay."). Other reasons such as exhaustion of bonding capacity may also preclude additional contracts. *Interstate Gen. Gov't Contractors, Inc.,* 12 F.3d 1053 (Fed.Cir.1993).

For the purpose of compensating Wickham for the effects of a project delay on home office overhead, the Board properly defined overhead as "those costs which are expended for the benefit of the business as a whole and which usually accrue over time." 92–3 BCA ¶ 25,040 at 124,818. The pool to which the *Eichleay* formula is applied must contain only such indirect costs.[5] Home office costs, by their nature, cannot be traced to any particular contract. Thus, they are properly categorized as overhead costs and, assuming their allowability, included in the *Eichleay* pool. Were it possible to trace a cost to a particular contract, it would be a direct cost of the contract. *C.B.C. Enters.,* 978 F.2d at 672.

The Armed Services Board of Contract Appeals devised the *Eichleay* formula to provide a fair method for allocating home office overhead costs, otherwise inallocable, to specific contracts. *Eichleay Corp.,* ASBCA No. 5183, 60–2 BCA ¶ 2688, 1960 WL 538 (July 29, 1960), *aff'd on reconsid.,* 61–1 BCA ¶ 2894, 1960 WL 684 (1960). The *Eichleay* board found it necessary to allocate overhead costs pro-rata because they "cannot ordinarily be charged to a particular contract. They represent the cost of general facilities and administration necessary to the performance of all contracts." 60–2 BCA ¶ 2688 at 13,574, 1960 WL 538. Thus, the *Eichleay* formula seeks to equitably determine allocation of unabsorbed overhead to allow fair compensation of a contractor for government delay. *Id.* at 13,573, 1960 WL 538. Allocation based

on a pro-rata share is necessary because overhead cannot be traced to any particular contract since overhead consists of expenses which benefit and are necessary to every contract. *Id.*

### 2. Wickham's Arguments

In this case the ratio of billings from the delayed contract to total billings is about 34%. Thus, under the *Eichleay* formula, 34% of Wickham's overhead expense, incurred during the contract period, is allocable to the contract. However, Wickham claims that approximately 80% of its home office activity and, therefore, 80% of its home office overhead expense was devoted to the Albany contract during the delay period.[6] Thus, Wickham seeks compensation for 80% of the home office overhead costs actually incurred during the delay because, according to Wickham, they are directly attributable to the Albany contract. Wickham argues the *Eichleay* calculation is unfair because it is less than the actual percentage of overhead devoted to the delayed project. Therefore, per Wickham, the *Eichleay* formula should be used only when overhead costs cannot otherwise be accurately determined. In short, Wickham seeks to completely avoid the *Eichleay* formula.

Wickham's argument fails for a fundamental reason—Wickham confuses direct and overhead costs. As the Board noted, overhead costs benefit and are caused by the business as a whole, not any one project. Thus, overhead costs are never attributable to or caused by any one contract. Wickham's claim to "directly attributable" home office overhead is a non sequitur. If a cost is directly attributable to a contract, then it is a direct cost, not an overhead cost.

Wickham attempts to blur the distinction between overhead and direct costs simply to avoid the clear rule that the *Eichleay* formula governs the calculation of unabsorbed overhead. A contractor who wishes reimbursement for a cost directly attributable to

---

**5.** Whether or not a cost is a proper component of the *Eichleay* pool will also depend on whether that cost is considered allowable by the government under applicable regulations, normally incorporated into the contract. But allowability is not an issue here.

**6.** This is because Wickham's other two contracts were managed mainly on site while the Albany project was managed from the home office.

a contract must submit it as a direct cost. In a case such as this, where a contractor and the government have already consistently treated a cost as overhead, we will not upset their agreement by ourselves treating that cost as a direct cost and ordering reimbursement as such. In any event, we would lack jurisdiction under the CDA to do so because there were no contracting officer and board decisions denying such costs as direct costs. Therefore, there is no fact finding or ruling for us to review; and, of course, as an appellate court we may not make fact findings or initial rulings, generally or in the circumstances of this case.

Responding to Wickham's argument, the Board said, "[i]t makes no difference what the actual overhead effort was. We are here dealing with theoretics which produce approximations because more precise results cannot be obtained." 92–3 BCA ¶ 25,040 at 124, 818, 1992 WL 88326. In this statement the Board refers to the concept that the *Eichleay* formula calculates the unabsorbed overhead by a pro-rata share out of necessity. The *Eichleay* pool contains only overhead costs, those which cannot be attributed to a particular contract and which benefit and are caused by the business as a whole. To accurately determine how much unabsorbed overhead was caused by any one contract is impossible, even though Wickham claims to have done so.[7]

Unlike direct costs which are incurred only because of a particular contract, overhead costs are incurred even if the contractor had not undertaken a particular project. Ordinarily, all home office expenses fall into the overhead category because the contractor must operate a home office in order to seek work and administer contracts whether or not he is performing a particular contract. For instance, a contractor must provide for the home office space, pay for utilities pertaining to that space, pay licensing fees and officer's salaries even when the contractor

has no current contracts and is merely seeking work.

Given this established definition of overhead costs, the very premise of Wickham's argument is incorrect. Wickham contends that because 80% of its home office *activity* related to the Albany contract, 80% of its home office *costs* is directly attributable to that contract. Wickham fails to recognize that a cost is directly attributable to a contract only when the cost is *caused* by the contract. The Albany project did not cause 80% of Wickham's home office costs because Wickham would have incurred the individual cost components of the home office overhead whether or not it ever undertook the Albany project. For instance, the Albany project did not cause 80% of Wickham's home office rent even if 80% of the activity in that office related to the Albany project.[8] Because Wickham would have incurred the same or similar rental expense in any event, no portion of the rent is directly attributable to the Albany project.

### 3. Alternatives to Eichleay Disapproved

Wickham relies on *Miles Construction*, VABCA No. 1674, 84–1 BCA ¶ 16,967, 1983 WL 13694 (Nov. 30, 1983), to support its argument that the *Eichleay* formula should be used to allocate overhead expenses only when more accurate proof of unabsorbed overhead expenses is unavailable. In *Miles* the contractor testified that during the contract period, he was performing no work other than the delayed government contract at issue. In addition, his financial statements indicated that he received no other income during the contract period. According to the *Eichleay* formula then, 100% of the contractor's overhead cost incurred during the contract period was allocable to the delayed contract. *Id.* at 84,375, 1960 WL 538; *see* note 3, *supra*. However, the contractor's financial records indicated purchases for undisclosed job accounts and unexplained labor costs during the delay period. The *Miles*

---

7. Even assuming a home office cost is measurable and divisible between a contractor's various contracts, if that cost has been properly classified as overhead, it becomes part of the *Eichleay* pool and may only be allocated to a contract based on the *Eichleay* formula.

8. While it is true that some home office expenses may increase slightly due to a particular contract (due to increased photocopying, for instance), generally the amount of the increase is sufficiently small and difficult to trace and quantify that the increase is still treated as an overhead cost.

Veterans Board concluded that "[g]iven these unexplained activities, we cannot conclude that 100% of Appellant's overhead should be allocated to the VA contract. . . . Accordingly, we believe this situation justifies use of a 'jury verdict' approach." *Miles Constr.*, 84–1 BCA ¶ 16,967 at 84,375, 1983 WL 13694. The *Miles* Board decided that "[g]iven the circumstances" it was "reasonable" to allocate 90% of the overhead incurred to the delayed contract. *Id.*

Both the facts and the analysis of *Miles* are distinguishable from this case. The *Miles* Board decreased the award to the contractor from the amount calculated according to the *Eichleay* formula because the contractor's financial statements indicated that he may have performed undisclosed work during the delay period. The implication of the undisclosed work is that the contractor may have received undisclosed income during the contract period, which would have decreased the percentage of overhead allocable to the delayed contract. The *Miles* Board did not deviate from the *Eichleay* formula based on the rationale that any portion of the contractor's overhead was directly attributable to or caused by the delayed contract. Thus, *Miles* does not support Wickham's position.

In addition, the "jury verdict" approach of *Miles* has not subsequently been followed by any board, including the Veterans Board. Moreover, board decisions since *Miles,* including those of the Veterans Board, have uniformly rejected the use of other formulas in place of the *Eichleay* formula. *See Bridgewater Constr. Corp.*, VABCA No. 2956, 91–3 BCA ¶ 24,272, 1991 WL 160881 (Aug. 12, 1991) (rejecting an alternative calculation that gave a significantly higher daily rate of overhead than the *Eichleay* formula); *Berkeley Constr. Co.*, VABCA No. 1962, 88–1 BCA ¶ 20,259, 1987 WL 45887 (Oct. 27, 1987) (rejecting a "total cost" formula); *G.S. & L.*

*Mechanical & Constr. Inc.*, DOT CAB No. 1640, 86–3 BCA ¶ 19,026, 1986 WL 19793 (May 22, 1986) (rejecting a modified *Eichleay* formula); *Stephenson Assoc., Inc.*, GSBCA No. 6573, 86–3 BCA ¶ 19,071, 1986 WL 19955 (Mar. 27, 1986) (rejecting a "simulated work" formula).

Finally, beyond concluding that *Miles* does not support Wickham's position, we hold that the "jury verdict" approach which was used in *Miles* and which Wickham effectively asks us to apply here is an improper method for allocating overhead to a delayed government contract to compensate a contractor for unabsorbed overhead. When a contractor satisfies the prerequisites for application of the *Eichleay* formula, that formula is the exclusive means available for calculating unabsorbed overhead to the delayed contract.[9]

Due to the nature of overhead expenses, a precise method for allocating overhead to specific contracts cannot be devised, but the *Eichleay* formula provides a feasible, equitable and predictable method of compensating a contractor for unabsorbed overhead. By allocating a pro-rata share of the overhead expense to the delayed contract, the *Eichleay* formula fairly distributes the overhead. By reimbursing the contractor based on the length of the delay, the *Eichleay* formula compensates the contractor, but only for unabsorbed overhead, recognizing that a portion of the overhead allocable to the delayed contract will be absorbed by the direct costs of that contract. Thus it adequately compensates the contractor without unduly burdening the taxpayers.

In sum, because it is impossible to determine the amount of unabsorbed overhead caused by the delay of any particular contract, and because the *Eichleay* formula provides an equitable method of compensating a contractor for unabsorbed overhead without costing taxpayers more than they should pay, we hold that the *Eichleay* formula is the

---

**9.** In a case such as *Miles* in which a contractor provides inadequate financial data for an accurate and fair *Eichleay* calculation, the contracting officer and appeals board have options beyond the "jury verdict" approach of *Miles*. For instance, the board may estimate the contractor's total billings for the contract period. *See Bridgewater Constr. Corp.*, VABCA No. 2956, 91–3 BCA ¶ 24,272, 1991 WL 160881 (Aug. 12, 1991). If the financial data is seriously incomplete, the *Eichleay* requirements are not met and, therefore, the claim for unabsorbed overhead compensation may simply be denied. *See Colorado Piping & Mechanical, Inc.*, GSBCA No. 8254, 91–2 BCA ¶ 23,684, 1991 WL 3970 (Jan. 11, 1991).

exclusive means for compensating a contractor for unabsorbed overhead when it otherwise meets the *Eichleay* prerequisites.

### B. Direct Field Costs are not Overhead

■ Wickham asserts that several direct field costs should be considered components of the overhead pool. Wickham had initially included these disputed costs in its original claim as direct field costs for travel and business meetings, telephones charges attributable to the field offices of its three projects, professional fees, union welfare benefits and payroll taxes paid in connection with construction labor, and rental charges for equipment used to accomplish the three projects.

According to Wickham, it removed these costs from its claim for direct costs due to GSA concerns that they represented potential double billing. Wickham then resubmitted these cost as overhead claims. Wickham contends that the government asked that these costs be removed from direct cost settlement claims, and then refused to consider these costs as overhead. Without so describing it, Wickham suggests that the government be judicially estopped from changing positions. On these facts, no estoppel has been shown.

The Board made specific findings regarding each individual category, explaining that each category included direct costs of the Albany project and Wickham's other two projects, and not overhead costs. In addition, the Board found that Wickham failed to carry its burden of proving that a disputed portion of the travel and business meetings expense and that the professional fees were allocable to overhead. 92–3 BCA ¶ 25,040 at 124,819–20, 1992 WL 88326. Even Wickham's accounting expert testified that many of these expenses were directly attributable to specific projects. Wickham does not challenge the Board's finding that the disputed items are direct costs. Rather, Wickham argues that these costs should be included in the overhead pool anyway. In effect, Wickham wants us to ignore established accounting standards and settled case law. We are not persuaded to do either.

As explained above, the overhead pool may include only those costs expended for the benefit of the business as a whole, those that cannot be attributed to a particular project. Therefore, the Board correctly did not allow any part of the field costs that was directly attributable to either the Albany project or another project to be added to the overhead pool.

Wickham further argues that the disputed expenses were submitted as overhead costs after being withdrawn as direct costs pursuant to an agreement between the parties. However, Wickham does not cite any statement by the government making such an agreement. Wickham relies solely on its own unilateral statement that the costs will be withdrawn as direct costs and resubmitted as overhead costs. Nor did the Board find any such agreement. Because Wickham chose to settle disputed direct costs by withdrawing them, it cannot now properly claim those disputed costs as overhead. They are not overhead and Wickham's withdrawal of these items was unilateral and voluntary. To preserve the issue for our review, Wickham would have had to insist on these costs as direct costs and then appeal a denial by the contracting officer to the Board and, if necessary, to us. It chose not to do so. That its choice binds it here is only a natural consequence of such a deliberate waiver.

### C. The Early Finishing Date was not Proven

■ Wickham claims that it would have finished the renovation work in ten months instead of the 12 allowed by the contract if the government had not delayed the work. Measuring the delay from the early finish date would give a 1029 day, rather than a 969 day, delay period for use in the *Eichleay* formula. To support its claim of an early finish date, Wickham points to the critical path method schedule (CPM) completed by GSA's independent scheduling consultant which showed a ten month completion date. Wickham argues that the CPM schedule is sufficient evidence to meet its burden of showing that, but for the delay, it would have completed the work by the projected early finish date. Wickham's project manager also stated that the contract could have been completed within ten months.

Wickham further argues that its evidence of early completion is undisputed by GSA. However, GSA asserts that it never approved the early completion date, but only used the CPM schedule for the purpose of making progress payments to Wickham.

The Board found that Wickham did not meet its burden of showing that it would have finished by the early date absent government delays, and, therefore, held it not entitled to be compensated for the longer delay period. The Board reasoned that even assuming GSA did agree to the early finish date, it is still Wickham's burden to show that it would have finished by that date. The Board found that Wickham lacked sufficient evidence that it would have finished early, so any statement to that effect was simply "speculative." 92–3 BCA ¶ 24,040 at 124,817, 1992 WL 88326.

Wickham charges that the Board totally disregarded its evidence. This argument is not convincing. It was Wickham's burden to show that it *could* have finished the contract work early and *would* have done so but for the delay by GSA. *See Metropolitan Paving Co. v. United States*, 325 F.2d 241, 242–43 (Ct.Cl.1963) ("It would seem to make little difference whether or not the parties contemplated an early completion.... The burden of proving that the alleged delay was caused by defendant, and did encompass the alleged 94 days, is of course upon plaintiff."); *see also Elrich Contracting, Inc.*, GSBCA No. 10936, 93–1 BCA ¶ 25,316 at 126,142, 1992 WL 181692 (July 27, 1992). Wickham proved neither. The Board considered the CPM schedule, but still found that Wickham did not meet its burden of proving that it *would* have completed the project early. Although the Board did not separately address whether Wickham *could* have finished early (had the capacity, shown in a viable work schedule), the finding the Board did make supports a ruling against Wickham for not having met its burden.

Thus, the Board's determination that delay damages should be calculated from the contract's specified completion date is supported by substantial evidence and not arbitrary or capricious.

### D. Interest on Equity Capital is not Allowable and Borrowed Funds were not Used

Wickham seeks reimbursement for $196,182 for the "cost" of using equity capital and borrowed funds to finance the Albany contract. Wickham maintains that it was forced to counter the severe cash flow problems caused by delay of the Albany contract by using its equity and borrowings to subsidize the contract work. For this reason, Wickham claims entitlement to additional compensation. Wickham's expert arrived at the requested amount through a formula using the average of the equity capital utilized during the contract period, the average Treasury interest rate, the average overhead, and the total direct job costs. 92–3 BCA ¶ 25,040 at 124,820, 1992 WL 88326.

The Board rejected Wickham's claim for two reasons. First, by requesting "the additional costs of supporting and financing the Project with the company's equity capital" (Appellant's Brief at 32), Wickham is essentially trying to recover interest on equity capital. Wickham even applied the average interest rate paid by the Treasury in its calculation of the sum it seeks to recover.

This court rejected a claim for the cost of using equity capital to finance additional expenses due to government delays in *Gevyn Constr. Corp. v. United States*, 827 F.2d 752, 754 (Fed.Cir.1987) ("Even assuming, arguendo, that Gevyn had used equity capital to fund some or all of the changed work, 28 U.S.C. § 2516(a) (1982) generally prohibits the award of interest against the federal government, except where allowed by contract or statute."). We are as bound by that decision, as is the Board. We therefore hold the Board was correct in ruling that Wickham is not legally entitled to receive interest for use of its equity capital.

Although interest on equity capital is not recoverable, a contractor may recover interest actually paid on funds borrowed because of the government's delay in payments and used on the delayed contract. *Id.* ("[28 U.S.C. §] 2516(a) does not bar an interest award as part of an equitable adjustment under a fixed-price contract if the contractor

has actually paid interest because of the government's delay in payment"). Nevertheless, the Board rejected Wickham's claim because it showed neither that borrowed funds were used in connection with the Albany project, nor that the borrowing resulted from the delay. Wickham's own accounting expert testified that although Wickham borrowed between $200,000 and $350,000 during the contract period, he could not determine if any of those funds were used on the Albany project. 92–3 BCA ¶ 25,040 at 124,820, 1992 WL 88326.

We conclude that the Board's finding that Wickham did not show that the amount sought based on the borrowed funds was incurred in connection with the Albany project is supported by substantial evidence. In response to the Board's finding, Wickham has made only conclusory statements about a "substantial negative cash flow as a consequence of the delay." Such statements cannot undermine the Board's finding which after all was not based only on lack of evidence, but also on the testimony of Wickham's own expert. Therefore, the Board's conclusion that Wickham failed to carry its burden is supported by substantial evidence.

## IV. CONCLUSION

We affirm the Board's decision that Wickham is not entitled to additional compensation for home office overhead expenses incurred under a contract with the GSA as a result of GSA-imposed delays. The *Eichleay* formula and not a "directly attributable" percentage is the proper method, and the only proper method, for calculating unabsorbed home office overhead when a contractor otherwise satisfies the *Eichleay* requirements. Moreover, Wickham cannot expand the overhead pool by including direct costs, especially after withdrawing them. Wickham's claim to an extended delay period was also properly rejected; the Board's finding that Wickham did not show that absent the GSA delay it would have finished by the projected early date is supported by substantial evidence. Finally, for the different reasons stated above, Wickham is not entitled to the interest payments claimed for use of either equity capital or borrowed funds.

The Board's decision is therefore, in all respects,

*AFFIRMED.*