**GRUMMAN AEROSPACE CORPORATION (on behalf of Rohr Corporation), Appellant,**

v.

**Gordon R. ENGLAND, Secretary of the Navy, Appellee.**

No. 01–1405.

United States Court of Appeals,
Federal Circuit.

April 12, 2002.

Before MAYER, Chief Judge, NEWMAN, and PROST, Circuit Judges.

PROST, Circuit Judge.

Grumman Aerospace Corporation, on behalf of Rohr Corporation, ("Rohr") appeals from the decision of the Armed Services Board of Contract Appeals ("Board") awarding Rohr damages of $7,874,702 for disruption to its business resulting from the government's constructive changes to the quality assurance and inspection practices for F–14 components manufactured

by Rohr. *Grumman Aerospace Corp.,* ASBCA No. 50090, 2001 WL 146691 (Feb. 12, 2001). We have jurisdiction under 41 U.S.C. § 607(g)(1)(A). Because the Board's decision was supported by substantial evidence and is not contrary to law, we *affirm.*

The scope of our review of the Board's decision is governed by 41 U.S.C. § 609(b), which states:

> [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). With respect to questions of law, this court reviews the Board's decision *de novo* but gives careful consideration to the Board's legal conclusions in recognition of its considerable experience in construing government contracts. *Wickham Contracting Co. v. Fischer,* 12 F.3d 1574, 1577 (Fed.Cir.1994). Under these standards, we review each of the Board's alleged errors identified by Rohr.

■ Rohr first argues that the Board applied a "learning curve" theory of damages that was arbitrary and not supported by substantial evidence. According to Rohr, the Board relied on the testimony of the government's expert who did not properly apply the learning curve theory.

Rohr and the government each presented expert testimony about how the learning curve theory should be applied in this case. The Board then chose to adopt the approach of the government's expert instead of Rohr's, explaining that "[b]ased on the evidence presented, the 'recovery' learning curve theory presented by Rohr's expert, Mr. Lewis, appears to be without support." Board's Opinion at 105. The Board considered the same argument Rohr now raises on appeal and concluded that "[t]hough Rohr has criticized [the expert's] approach as at odds with the theory he espouses, we believe it is a rational way to recognize the disruption." *Id.* at 106. Based on our review of the record and the Board's Opinion, we conclude that the Board's decision was not arbitrary and is supported by substantial evidence.

■ Rohr next challenges the Board's reduction in the number of overrun hours for which the government should be liable, claiming that the Board arbitrarily double deducted for Rohr's involvement in the cost overrun. After considering, *inter alia,* the testimony of each party's expert and the evidence of Rohr's internal major assembly assessments of the cost overrun, the Board concluded that "67,310 excess hours already accounts for 9,545 hours for which Rohr has accepted responsibility. We believe the 67,310 excess hours must be further reduced." *Id.* (citation omitted). According to the Board, "some further adjustment is in order" because "Rohr contributed to the additional costs incurred throughout the claim period." *Id.* at 107. Thus, the Board determined that Rohr's admitted deductions were insufficient to account for the non-government induced cost overruns and that a further adjustment based on the evidence before it was necessary. Based on our

review of the record and the Board's Opinion, we do not agree with Rohr that the Board's decision was arbitrary.

■ Rohr also argues that the Board erroneously cut off any relief for damages occurring after July 1, 1990. New operating guidelines went into effect on July 2, 1990, and as a result, the number of rejections of Rohr-manufactured components and documentation dramatically decreased. *Id.* at 65, 73. The Board's Opinion indicates that the disruption to Rohr's business from changes in the government's review process effectively ended with the implementation of the new operating guidelines and that other events occurring in 1990 eased the burden on Rohr. *See, e.g., id.* at 20, 30, 31, 50, 54, 59, 61–62, 65, 73. Moreover, in 1990 Rohr negotiated a higher sales price for its F–14 components to account for the increase in its costs. Rohr realized a 15% profit from the newly-priced components. *Id.* at 71–73. Rohr argues that it nevertheless should be compensated for the period between July 1990 and October 1990 when its last lower priced lot was completed. Rohr fails, however, to identify any evidence in the record to substantiate this claim. Based on our review of the record and the Board's Opinion, we are not persuaded that the Board's decision was erroneous.

■ Rohr next argues that the Board erred by refusing to award any damages in certain areas where the government was clearly liable for injury to Rohr. In particular, Rohr argues that it should recover the amounts it claimed for its Bond Shop, Process Impact Team, Throughput Improvement Team, Direct and Allocated Services Labor, Materials and Wheel Wells. While Rohr provides us with scant specifics, it claims to have "offered suffi-cient evidence for the Board to make a fair and reasonable approximation of damages in these areas, but the Board granted no relief." In each of these instances, the Board assessed the evidence presented by Rohr but found it to be insufficient or lacking credibility. *See, e.g., id.* at 110 ("Rohr's methodology for proving the common shops claim is simply not convincing"), 119 ("we are not persuaded in light of the uncertainty of the overall analysis"), 121 ("Rohr's evidence in support of recovery in the fifth period is not persuasive"), 125 ("Rohr has not established that the Government caused it to create the [special] teams nor has it given credit for any benefits to its commercial programs"), 129 ("[Rohr's] study is an inadequate foundation for assigning what would be an 'estimated' casual responsibility to DCAS and reliance on it would be invitation to speculation"), 133 ("In the final analysis, Rohr has not persuaded us that DCAS was the principal reason for the decision or that, in any event, the costs claimed are an appropriate alternative way of measuring any damage Rohr would otherwise have suffered"). We are not persuaded that the Board's decision, made after a careful and thorough consideration of Rohr's evidence as described in its Opinion, was erroneous.

■ Finally, Rohr argues that it should have been awarded consultant costs of nearly $3 million. The Board denied these costs, stating that the testimony presented by Rohr did not permit the Board "to understand the details of the assignment [of Rohr's consultants and attorneys]—details that we believe are crucial for understanding the purposes for which counsel and, in turn, the consultants were engaged." *Id.* at 138. In addition, the Board stated that it was "not in a position to determine whether the costs incurred

714

prior to claim submission were incurred for the genuine purpose of furthering the negotiation process with the Government, either prior to or after a claim submission." *Id.* After pointing out these shortcomings in Rohr's evidence, the Board concluded that "[t]he record that is before us discloses a litigation posture from the outset.... Rohr has not proved that the costs claimed were incurred for the genuine purpose of materially furthering the negotiation process." *Id.* at 138–39. Rohr's brief on appeal identifies the evidence, which it believes satisfies the deficiencies noted by the Board. While these portions of the record may help to explain the tasks performed by the consultants in order to assess the reasons for Rohr's cost overruns, they do not address the Board's concern that there was insufficient evidence presented by Rohr that this work was performed for purposes of negotiation instead of litigation. Based on our review of the record and the Board's Opinion, we believe the Board's decision was consistent with the evidence before it.

In summary, Rohr has failed to show that the Board's decision was arbitrary, erroneous, or not supported by substantial evidence. The Board's decision is therefore affirmed.