# United States Court of Appeals for the Federal Circuit

04-1461

LOCKHEED MARTIN CORPORATION,

Appellant,

v.

Gordon R. England, SECRETARY OF THE NAVY,

Appellee.

E. Sanderson Hoe, McKenna Long & Aldridge LLP, of Washington, DC, argued for appellant. With him on the brief were Daniel G. Jarcho and Jason N. Workmaster.

William K. Olivier, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Of counsel on the brief was Charles W. Goeke, Attorney, Defense Contract Management Agency, of Philadelphia, Pennsylvania.

Appealed from: United States Armed Services Board of Contract Appeals

# United States Court of Appeals for the Federal Circuit

04-1461

LOCKHEED MARTIN CORPORATION,

Appellant,

v.

Gordon R. England, SECRETARY OF THE NAVY,

Appellee.

_____

DECIDED:  September 21, 2005

_____

Before RADER, DYK, and PROST, Circuit Judges.

PROST, Circuit Judge.

Lockheed Martin Corp. ("Lockheed") appeals from a decision of the Armed Services Board of Contract Appeals ("Board") in which the Board held that Lockheed was not entitled to recover for subcontract effort in a termination settlement. Lockheed Martin Corp., Naval Elecs. & Surveillance Sys.—Surface Sys., ASBCA Nos. 53032, 54064, 2003 ASBCA LEXIS 104 (Oct. 16, 2003). We affirm the Board's decision.

## I. BACKGROUND

Plaintiff Lockheed contracted with the Navy to supply antennas and transmitters

for the Navy's AEGIS program.[1]  This effort was known as the AEGIS Second Source Radar Qualification Program and was divided into two phases:  Phase I and Phase II. Phase I consisted mainly of planning.  Phase II required Lockheed to provide a demonstration antenna and transmitter.

Lockheed enlisted several subcontractors to assist in the Second Source Radar Qualification Program.  For the antenna work, Lockheed itself was to be the leader, Unisys Corp. ("Unisys") would be the first-tier subcontractor, and Westinghouse Corp. ("Westinghouse") would be the second-tier subcontractor.  For transmitters, first-tier subcontractor Raytheon Co. ("Raytheon") would lead the project, and Unisys would be the second-tier subcontractor.  We adopt the parties' convention of using "Unisys-Antenna" and "Unisys-Transmitter" to distinguish between the two roles Unisys played in this contractual arrangement.

The prime contract between the Navy and Lockheed was initially undefinitized but contemplated definitization into a cost-plus-fixed-fee ("CPFF") contract.  In a CPFF contract, the contractor recovers its allowable incurred costs and also receives a pre-negotiated fee.  Before a contract is "definitized" through establishment of its final terms, a contractor may begin performance pursuant to a preliminary contractual instrument that is sometimes called a "letter contract."  The prime contract in this case contained the standard Federal Acquisition Regulation ("FAR") termination for convenience clause for cost-type contracts.  See 48 C.F.R. § 52.249-6 (2005).

---

[1]  The AEGIS Weapon System is a guided missile system that includes a radar system known as AN/SPY-1.  The primary function of the SPY-1 Radar is to search, detect, and track air and surface targets in heavy clutter and electronic countermeasure environments.  The SPY-1 Radar consists of a Transmitter Group, a Signal Processor, and an Antenna.

The first-tier transmitter subcontract with Raytheon was also a CPFF contract. It contained the standard FAR termination for convenience clause for cost-type contracts. See id. However, the second-tier subcontract with Unisys-Transmitter was a firm-fixed-price ("FFP") contract. In an FFP contract, the price is not subject to any adjustment solely on the basis of the contractor's costs incurred in performing the contract. Both antenna subcontracts were also FFP contracts. They contained the standard FAR termination for convenience clause for fixed-price-type contracts. See 48 C.F.R. § 52.249-2 (2005). The structure of the overall contractual arrangement is shown in Figure 1 below.



**Figure 1: Contract Structure**

The second-tier subcontracts required the subcontractors to deliver data items known as Subcontract Data Requirements List items ("SDRLs") to their next higher-tier subcontractors. During both Phase I and Phase II, the subcontractors delivered many

SDRLs. SDRLs included a wide variety of items, including status reports, meeting agendas and minutes, presentation materials, quality assurance inspection reports, test procedures, a production/delivery plan, a quality assurance program plan, and a list of special tools and equipment.

On March 30, 1990, the Navy stopped work on the program. At this point, many Phase II SDRLs had been delivered, but assembly of the demonstration hardware had barely begun. The Navy proceeded to terminate the prime contract for the government's convenience on June 21, 1990. In consequence, Lockheed terminated the Unisys-Antenna and Raytheon subcontracts for convenience, and those parties terminated their second-tier subcontracts with Westinghouse and Unisys-Transmitter for convenience. Each lower-tier subcontractor submitted a termination settlement proposal to its next-higher-tier contractor for negotiation. Lockheed collected these proposals and included them in its termination settlement proposal to the government. None of the subcontractors' settlements would become final until approved or ratified by the Termination Contracting Officer. See 48 C.F.R. § 49.108-3(b)(2) (2005).

The Termination Contracting Officer did not ratify the subcontract settlements. Specifically, she objected to the fee and profit amounts calculated based on Phase II work by Unisys-Transmitter and Westinghouse.[2] At that point, the Termination Contract Officer was apparently unaware of the SDRLs that had been delivered by Unisys and Westinghouse on the antenna and by Unisys on the transmitter. She determined that none of the Phase II second-tier subcontract work had been completed and delivered

---

[2] "Fee" and "profit" are similar concepts, but the term "fee" is used for cost-type contracts, and "profit" for fixed-price contracts. See FAR 49.202, 49.305-1.

and consequently held that no profit or fee should be paid to Lockheed or its subcontractors for Phase II. The Termination Contract Officer relied on FAR 49.202(a), which states that "profit shall not be allowed the contractor for material or services that, as of the effective date of termination [for convenience], have not been delivered by a subcontractor, regardless of the percentage of completion." 48 C.F.R. § 49.202(a).

In response, Lockheed's final termination settlement proposal sought fee or profit (as appropriate to the contract type) for all costs incurred by the subcontractors. The Termination Contract Officer denied the requested fee and profit at all levels, insofar as the fee and profit was based upon Phase II work performed by the fixed-price subcontractors. She did not consider the SDRLs to be "delivered" Phase II material or services, because only "Phase I call[ed] for detailed analyses of requirements and the development of plans and procedures; Phase II [required] the production, qualification, and delivery of hardware." Lockheed had still not informed her of what specific SDRLs were delivered and what value Lockheed placed on them; it finally did so in June 2002, two years after she issued her final decision.

In the meantime, Lockheed appealed to the Board in September 2000. While the case was pending, the Board directed Lockheed to submit its listing and valuation of Phase II SDRLs to the Termination Contract Officer. The TCO reviewed this material and found that Lockheed had "failed to adequately substantiate" the delivery of the SDRLs. Lockheed appealed this decision, as well.

The Board found that Lockheed had demonstrated, albeit tardily, that "a massive amount of antenna SDRLs" had been delivered by Westinghouse and Unisys. Based on FAR 49.202(a), the Board allowed Unisys-Antenna to recover profit of $926,550 on

the SDRLs produced by Westinghouse because Unisys-Antenna had an FFP contract with its next-higher-tier contractor, Lockheed.[3] Although the Board awarded Lockheed profit under the FFP antenna contract, it rejected Lockheed's proposed method for calculating the amount of that profit. The Board held that the contract accounting requirement of Department of Defense Instruction ("DODI") 7000.2 governed the valuation of the delivered SDRLs. Lockheed Martin, 2003 ASBCA LEXIS 104, at *102-03.

The Board denied fee to Raytheon for Unisys-Transmitter's effort because Raytheon had a CPFF contract with Lockheed and the subcontractor effort was "included in" the proposed settlement between Unisys-Transmitter and Raytheon. The Board also denied fee for Raytheon and Unisys-Antenna's effort because Lockheed had a CPFF contract with the Navy. According to the Board,

> FAR 49.202(a) and FAR 49.305-1(a) do not provide the same recovery in terms of profit and fee based on subcontractor work. In the case of FAR 49.202(a), which applies to fixed-price contracts terminated for convenience, profit is not allowed for "material of services that, as of the effective date of the termination, have not been delivered by a subcontractor" . . . . In contrast, FAR 49.305-1(a), which applies to cost-reimbursement contracts terminated for convenience, flatly provides that the contractor's adjusted fee "shall not include an allowance for fee for subcontractors' effort included in subcontractors' settlement proposals" . . . .

Lockheed Martin, 2003 ASBCA LEXIS 104, at *89 (internal cross-references omitted).

As mentioned, the Board determined that the Phase II transmitter SDRLs were "included in" the subcontractor settlement proposals. See 48 C.F.R. § 49.305-1 (2005).

---

[3]   Lockheed Martin, 2003 ASBCA LEXIS 104, at *85-85, 99-100. Because Lockheed presented a gross settlement proposal on behalf of itself and all its subcontractors, this profit was awarded to Lockheed, but the dollar value of Lockheed's first-tier settlement with Unisys-Antenna increased by the same amount. See id. at *102-03.

The parties had disputed the meaning of the term "included in." Lockheed had argued that "the mere listing of the cost of particular subcontract effort somewhere on a termination form . . . cannot mean that that effort is 'included' in the subcontractor's settlement proposal for the purpose of FAR 49.305-1(a)[.]" The Board declined Lockheed's invitation to "get around FAR 49.305-1(a) by simply including the unpriced but delivered Phase II subcontractor work as a part of 'Finished Product' on line 10 of Unisys' Standard Form (SF) 1436." It found "no support" for Lockheed's suggestion that "Unisys erroneously placed the delivered Phase II transmitter SDRL costs on its Termination Settlement Proposal (TSP) (SF Form 1436)." Accordingly, the Board concluded that "the Phase II transmitter SDRL costs (subcontractor effort) were a part of, and included in, Unisys' settlement proposal, subject to the no-fee limitation of FAR 49.305-1(a)."

Lockheed moved for reconsideration. The Board denied the motion, re-emphasizing that "fee is not allowed on any subcontractor effort regardless of delivery" in cost-type contracts under FAR 49.305-1(a). Lockheed Martin Corp., Naval Elecs. & Surveillance Sys.—Surface Sys., ASBCA Nos. 53032, 54064, 2004 ASBCA LEXIS 16, at *5 (Mar. 10, 2004). With respect to the methodology for evaluating the antenna SDRLs, the Board again stood by its original ruling, holding that Department of Defense Instruction ("DODI") 7000.2 and MIL-STD-881[A] provided a cost estimation system that was "imposed on all contractors" and that precedent allowed an estimate to serve as a basis for an adjustment upon termination of a contract. Id. at *15. The Board also relied upon DD Form 1423's instruction to contractors to price data items "only from those costs which will be incurred as a direct result of the requirement to supply the

data, over and above those costs which would otherwise be incurred in performance of the contract if no data were required[.]" Id. at *19.

## II. DISCUSSION

Lockheed appeals the denial of fee for itself and Raytheon, contending that CPFF contractors like themselves should be treated the same as FFP contractors. The Court of Appeals for the Federal Circuit reviews final decisions of the Board pursuant to 28 U.S.C. § 1295(a)(10) and 41 U.S.C. § 607(g) (2000).

### A. Standard of review

This court's review of agency boards of contract appeals is "very limited." Erickson Air Crane Co. v. United States, 731 F.2d 810, 814 (Fed. Cir. 1984). The Board's factual conclusions may not be set aside unless "fraudulent, or arbitrary or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." Id.; 41 U.S.C. § 609(b) (2000). Legal decisions are reviewed de novo. Wickham Contracting Co. v. Fischer, 12 F.3d 1574, 1577 (Fed. Cir. 1994). On mixed questions of fact and law, this court gives careful consideration and great respect to Board decisions. Vancouver Plywood Co. v. United States, 860 F.2d 409, 414 (Fed. Cir. 1988).

### B. Arguments

Lockheed accepts that FAR 49.305 governs the controversy in this case. This regulation provides that "[t]he contractor's adjusted fee shall not include an allowance for fee for subcontract effort included in subcontractors' settlement proposals." 48 C.F.R. § 49.305-1(a). Lockheed frames this appeal as a dispute over what it means for an item to be "included in" a subcontractor settlement proposal. In Lockheed's view, an

item is "included in" the proposal if it either has been or could have been invoiced. Because the SDRLs in question could have been invoiced, Lockheed contends, they should not be considered part of the settlement proposals, and Lockheed should be able to recover fee on behalf of itself and its subcontractors.

To support its claim to fee for the SDRLs, Lockheed argues that FAR Parts 15 and 16 evidence an overall intention to treat cost-type and fixed-price contracts the same for recovery of fee or profit. Lockheed emphasizes that nothing in the FAR guidelines advises the government or contractors to consider the impact of a termination for convenience on the contractor's performance or contractual risk. By contrast, the guidelines do encourage the use of cost-type contracts when performance is quite risky (e.g., when costs are unpredictable) for the contractor, and fixed-price contracts when the risk level is low. Lockheed calls it "incongruous" for a cost-type contractor, which has a cost-type contract precisely in order to shift risk to the government, to face more risk than a fixed-price contractor in a termination for convenience.

Lockheed also challenges the Board's use of the accounting methodology of DD Form 1423, DODI 7000.2, and MIL-STD-881A to determine the values of the Phase II antenna SDRLs. Lockheed claims that the accounting methodology based on these documents does not reflect the true value of the SDRLs, because much of the value of SDRLs is actually built into the overall contract price. When the government terminates a contract for convenience, as it did here, there is no opportunity to complete the contract and recoup the overall value, so the value of the SDRLs is underestimated, according to Lockheed.

The government disputes Lockheed's contention that the overall risk allocation scheme of Parts 15 and 16 requires cost-type and fixed-price contracts to be treated the same in a termination for convenience. The government presents a plain meaning argument to justify treating the two types of contracts differently. According to the government, there is a sound policy reason not to grant fee on effort that is built into a subcontract settlement, because the contrary approach would encourage contractors to seek inflated settlements with their subcontractors in order to increase the fee received from the government. As such, says the government, the test for whether fee is available on an item is not whether it could have been invoiced, but whether it was included in the net proposed settlement amount on a proposal. Under this standard, the SDRLs in this case were included in the settlement proposals. Not only was nothing deducted from the total settlement amounts to account for the SDRLs, says the government, but it makes sense that the SDRLs would have been the included as a subject of overall settlement negotiations because assigning values to the wide variety of SDRLs (which include status reports, meeting minutes, etc.) would have been impractical and subjective.

With respect to the calculation of the value of the SDRLs on which Lockheed was awarded profit, the government asserts that the Board properly relied upon the accounting system that Lockheed and its subcontractors used during contract performance. The government disputes Lockheed's contention that the instructions for pricing SDRLs in DD Form 1423, DODI 7000.2, and MIL-STD-881A are inapplicable in a termination for convenience. The government points out that DD Form 1423 calls the price "an amount equal to that portion of the total price which is estimated to be

attributable to the production or development for the Government of that item of data." The forms, moreover, permit the listing of the full cost of preparing an SDRL when prepared directly for and according to the specifications of the government (e.g., a "technical manual prepared for military use only"), while it restricts the pricing of contractors' internal documents (e.g., a drawing "used in the manufacturer's normal plant activities"). According to the government, the forms provide a reasonable method for capturing the complete and actual costs of data items.

## C. Analysis

Initially, we must interpret the profit provision of FAR 49.202 and determine how, if at all, FAR 49.305 and other parts of the FAR affect that interpretation. As detailed below, we agree with the government and the Board that FAR 49.202 does not allow a higher-tier contractor to recover fee for the effort of its subcontractors when the higher-tier contractor has a CPFF contract with its next-higher-tier contractor or with the government. We also affirm the Board's decision to value the delivered antenna SDRLs as the cost "over and above" that which would have been incurred had the relevant contract not required delivery of those data items.

## 1. Entitlement to Fee Based on CPFF Contracts

Lockheed argues that the law should treat subcontractor effort in cost-type and fixed-price contracts the same. However, Lockheed fails to establish that the law <u>does</u> treat them the same. Whereas Lockheed must rely on nebulous assertions about the overall tone and alleged policy objectives of a whole group of regulations, the government straightforwardly relies on the plain language of a single regulation that covers the situation presented in this case. The regulation explicitly says that "[t]he

04-1461                                    11

contractor's adjusted fee shall not include an allowance for fee for subcontract effort included in subcontractors' settlement proposals." FAR 49.305-1(a) (48 C.F.R. § 49.305-1).

Lockheed does not contend that the meaning of this provision is unclear. The most it can do is argue that the Board applied "an overly literal reading" of FAR 49.305-1. Lockheed, for its part, is arguing against the literal meaning of the regulation. This is a difficult row to hoe, and we are not persuaded that the provision should be interpreted in a way that contradicts its plain meaning.

The literal interpretation of "included in" requires that the contractor exclude the item from the settlement proposal. The contracting parties in this case made a deliberate choice not to invoice the SDRLs in question. The required settlement proposal form (SF 1436) submitted by each subcontractor allowed for excluding finished product already invoiced or "to be invoiced"; such items would not be included in the termination settlement. However, as counsel for Lockheed acknowledged at oral argument, the subcontractors chose not to exclude the SDRLs in question as items "to be invoiced" in the settlement proposal, and thus by their own choice included them in the settlement proposal. Lockheed is not entitled to get around these choices through creative interpretation of the regulations. Under these circumstances, we need not decide whether the SDRLs could properly have been invoiced (or reserved for later invoicing) and excluded from the settlement, as the contractors here elected to include them in the settlement proposal.

## 2.  Valuation of SDRLs Delivered Pursuant to FFP Contracts

Lockheed's attempt to obtain greater valuations for the delivered antenna SDRLs than the Board awarded is similarly unavailing.  The Board relied on the instructions in DODI 7000.2 and MIL-STD-881A (the latter of which was incorporated by reference into Lockheed's contract by reference and "flowed down" to all the subcontracts).  <u>Lockheed Martin</u>, 2004 ASBCA LEXIS 16, at \*15 n.3.  Lockheed's only rebuttal evidence is the subjective valuation of the SDRLs by officials from Lockheed and Raytheon.  We agree with the government that the form and the instructions provide a reasonable method for valuing the SDRLs.  It was not error for the Board to rely on the methodology in these documents in preference to the testimony of employees of the plaintiff and its subcontractor.

## III.  CONCLUSION

For the reasons stated above, we affirm the decision of the Board of Contract Appeals.

<u>AFFIRMED</u>