ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -                                    )
                                               )
Fluor Intercontinental, Inc.                   )   ASBCA Nos. 62550, 62672
                                               )
Under Contract No. W912BU-11-D-0003            )

APPEARANCES FOR THE APPELLANT:      James A. Hughes, Jr., Esq.
                                      Hughes Law PLC
                                      Arlington, VA

                                     Andrea L. Reagan, Esq.
                                     Donald M. Yenovkian II, Esq.
                                     R. Austin Kusnir, Esq.
                                      Counsels


APPEARANCES FOR THE GOVERNMENT:     Michael P. Goodman, Esq.
                                      Engineer Chief Trial Attorney
                                     Kyle A. Guess, Esq.
                                     John A. Skarbek, Esq.
                                     John R. Lockard, Esq.
                                      Engineer Trial Attorneys
                                      U.S. Army Engineer District, Norfolk


OPINION BY ADMINISTRATIVE JUDGE HERZFELD
ON THE GOVERNMENT'S MOTION TO DISMISS AND
APPELLANT'S MOTION FOR SUMMARY JUDGMENT


        Respondent, the United States Army Corps of Engineers, moves to dismiss part of appellant Fluor Intercontinental, Inc.'s (Fluor) complaint for failure to state a claim upon which relief may be granted. In particular, the agency seeks to dismiss Fluor's attempt to recover subcontractor Blanchard Machinery Company's (Blanchard) termination costs because Blanchard estimated some of its costs using an inapplicable cost principle. Fluor cross-moves for summary judgment, asserting that Fluor's decision to settle with Blanchard was reasonable and, thus, should be awarded all its costs from settling with Blanchard. We find that Fluor has plausibly pleaded a claim for recovery of its subcontractor costs, but that there is a genuine dispute of material fact as to whether and what amount of its costs were reasonable. Thus, we deny both motions.
                                    .

On December 3, 2010, the Corps of Engineers awarded an electrical support services multiple-award task order contract to Fluor (Contract) and to a competitor, Inglett and Stubbs Intercontinental (Inglett & Stubbs), for a base one-year period and four, one-year option periods (R4, tab 3 at 93, tab 2 at 8).  On February 14, 2011, Fluor entered a subcontract with Blanchard Machinery Company (Blanchard) using a basic ordering agreement (Subcontract) following from a teaming agreement to pursue the Contract (first amended compl. ¶¶ 10-12; app. supp. R4, tab 13 at 307-59 (basic ordering agreement); app. supp. R4, tab 13 at 297-306 (teaming agreement)).

With a closing date of September 25, 2012, the Corps of Engineers issued a task order solicitation and Fluor submitted a proposal to quickly provide leased generators to operate and maintain a 30 megawatt power plant at the airfield in Bagram, Afghanistan (first amended compl. ¶ 24; R4, tab 10 at 232-33).  On February 4, 2013, the Corps of Engineers awarded Fluor task order 10 (Task Order) under the Contract and issued a notice to proceed (first amended compl. ¶¶ 4, 29; R4, tab 2 at 42-46).  On February 27, 2013, Fluor issued a purchase order to Blanchard to lease generators, switches, and control panels to meet the Task Order requirements (codifying a "verbal/facsimile" agreement on February 18, 2013) (first amended compl. ¶ 17; app. supp. R4, tab 13 at 406-69).  Because Fluor would need to provide the government power generating capacity within 60-120 days of the notice to proceed, Fluor had previously authorized Blanchard to purchase, ready, and ship the equipment in September 2012, which Blanchard did (first amended compl. ¶¶ 26-27; app. supp. R4, tab 13 at 95 (indicating the generator acquisition dates); R4, tab 8 at 181 (acknowledging that Blanchard shipped the generators to Dubai)).

On February 27, 2013, the Corps of Engineers issued a stop-work order to Fluor (first amended compl. ¶ 5; R4, tab 4 at 109).  On March 18, 2021, Inglett & Stubbs filed a protest with the Government Accountability Office (GAO) challenging the award of the Task Order to Fluor (R4, tab 11 at 248; first amended compl. at 9 n.3).  On April 12, 2013, GAO dismissed the protest after the Corps of Engineers took corrective action (R4, tab 11 at 282-83).  While taking corrective action, the Corps of Engineers realized that it failed to timely exercise the options under the Contract and, thus, could not use the Contract as a vehicle to issue task orders to obtain these services (R4, tab 6 at 141).

On May 24, 2013, the Corps of Engineers terminated Fluor's Task Order for convenience (first amended compl. ¶ 5; R4, tab 6 at 143-46).  As part of the convenience termination notice, the Corps of Engineers directed Fluor to cease all activities and discussed procedures for submitting a termination settlement proposal (R4, tab 6 at 143-46).  Additionally, the Corps of Engineers specifically reminded Fluor of the contractor's obligations to its subcontractors:  "You remain liable to your subcontractors and suppliers for proposals arising because of the termination of their subcontracts or

orders. You are requested to settle these settlement proposals as promptly as possible. For purposes of reimbursement by the Government, settlements will be governed by the provisions of Part 49" (R4, tab 6 at 144).

The Contract incorporated by reference two Federal Acquisition Regulation (FAR) standard termination for convenience provisions: (1) FAR 52.249-1, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SHORT FORM) (APR 1984); and (2) FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004) (first amended compl. ¶ 72; R4, tab 2 at 31). Additionally, the Contract included two clauses requiring Fluor to flow down certain other FAR and Defense Federal Acquisition Regulation Supplement (DFARS) clauses to subcontractors providing commercial items: (1) FAR 52.244-6, SUBCONTRACTS FOR COMMERCIAL ITEMS (APR 2010); and (2) DFARS 252.244-7000, SUBCONTRACTS FOR COMMERCIAL ITEMS AND COMMERCIAL COMPONENTS (DOD CONTRACTS) (AUG 2009) (first amended compl. ¶ 59; R4, tab 2 at 30-31). FAR 52.244-6 otherwise discourages flowing down more clauses in commercial items subcontracts, but states, "Contractor may flow down to subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations." FAR 52.244-6(c)(2).

Fluor flowed down the two commercial items subcontract clauses to Blanchard in the purchase order (first amended compl. ¶ 20; app. supp. R4, tab 13 at 423).[1] However, as permitted by these two clauses, Fluor also flowed down the short form Termination for Convenience clause to Blanchard as part of the Subcontract, including the entire FAR provision:

> As prescribed in the FAR 49.502(a)(1), insert the following: "The Contracting Off[ic]er, by written notice, may terminate this contract, in whole or in part, when it is in the Government's best interest. If this contract is terminated, the rights, duties, and obligations of the parties, including compensation to the Contractor, shall be in accordance with Part 49 of Federal [A]cquisition [Regulation] in effect on the date of the award of this contract."

(First amended compl. ¶ 15 (quoting DFARS 52.249-1); app. supp. R4, tab 13 at 318 (same)) The Subcontract included several forms with terms and conditions, including an

---

[1] The supplemental appellant's Rule 4 file includes two tabs labeled as "13." We have labeled the second as "13.2" for ease of reference. Also, we use the pdf page numbers for appellant's supplemental Rule 4 file because appellant did not add page numbers as we generally require. ASBCA Rule 4(c) ("Any documents without internal page numbers shall have page numbers added.").

additional termination for convenience clause that promised any termination payment "shall be promptly and mutually agreed to" by Fluor and Blanchard (first amended compl. ¶ 16; app. supp. R4, tab 13 at 330).

Fluor submitted a termination settlement proposal (dated December 19, 2013) to the Corps of Engineers seeking $5,179,655 in termination costs (first amended compl. ¶ 42; R4, tab 13; app. supp. R4, tab 13.2 at 4, tab 15 at 1). Among other settlement costs, the termination settlement proposal included Blanchard's termination settlement proposal of $3,370,768 as "settlements with subcontractors" (first amended compl. ¶ 42; app. supp. R4, tab 13.2 at 4, tab 15 at 1; R4, tab 13 at 332).

The Corps of Engineers referred the termination settlement proposal to the Defense Contract Audit Agency (DCAA) to audit the proposal; Fluor and Blanchard answered questions and provided additional information to DCAA over the next several months (first amended compl. ¶ 42; R4, tab 8). In July 2014, while the DCAA audited the proposal (including Blanchard's costs), Fluor's complaint alleges that Fluor paid Blanchard $3,116,991.20 based on Blanchard's termination settlement proposal (leaving an unpaid balance due of $253,776.80) (first amended compl. ¶ 46). The Corps of Engineers denies, for lack of information, the allegation that Fluor made a settlement payment to Blanchard (answer ¶ 46).[2]

On December 15, 2015, DCAA issued an audit report of Fluor's termination settlement proposal, attaching DCAA's earlier November 10, 2015 separate audit report of Blanchard's termination settlement proposal (first amended compl. ¶¶ 54-55; R4, tab 8). The DCAA questioned $3,013,324 of Fluor's $5,179,655 termination settlement proposal, which resulted in DCAA opining that Fluor had demonstrated $2,166,331 in allowable costs:

| Cost Element | Settlement Proposal | RESULTS OF AUDIT | |
| --- | --- | --- | --- |
| | | Questioned | Difference |
| Direct Material | $511,506 | - | $511,506 |
| Direct Labor | 338,093 | 101,391 | 236,702 |
| Other Costs | 73,296 | - | 73,296 |
| Subcontractors | 3,370,768 | 2,374,480 | 966,288 |
| G&A | 63,994 | - | 63,944 |
| Profit | 741,572 | 537,453 | 204,119 |
| Settlement Expenses | 80,426 | - | 80,426 |

---

[2] We refer to the answer to the first amended complaint as the "answer" throughout this opinion.

| | | RESULTS OF AUDIT | |
|---|---|---|---|
| **Cost Element** | **Settlement Proposal** | **Questioned** | **Difference** |
| Material/Equipment | $675,513 | - | $675,513 |
| Shipping and Storage | 367,824 | 161,692 | 206,132 |
| Technician (Labor) | 11,182 | - | 11,182 |
| Equipment Depreciation | 1,634,527 | 1,634,527 | - |
| Overhead | 316,977 | 316,977 | - |
| Cost of Money | 112,374 | 112,374 | - |
| Profit | 231,406 | 148,909 | 82,496 |
| Settlement Expenses | 20,965 | - | 20,965 |
| **Total** | **$3,370,768** | **$2,374,479** | **$966,289** |

The top of the page shows the end of a preceding table:

| | | | |
|---|---|---|---|
| **Total** | | **$5,179,655** | **$3,013,324** | **$2,166,331** |

(First amended compl. ¶ 70; R4, tab 8 at 163)

The "subcontractors" category in the audit report related to Blanchard's costs and DCAA broke down its audit of those costs as follows:

(First amended compl. ¶ 67; R4, tab 8 at 165, 178)

Blanchard's termination settlement proposal included equipment costs (first amended compl. ¶ 36; app. supp. R4, tab 13 at 10). Blanchard calculated its costs for the generators and related equipment using five-year straight-line depreciation (first amended compl. ¶ 40; app. supp. R4, tab 13 at 12). Blanchard's proposal referenced FAR 31.205-11 – the cost principle for depreciation – and noted that it used the Internal Revenue Service "depreciable lives and calculated on a straight-line basis" (app. supp. R4, tab 13 at 12; first amended compl. ¶ 40). Fluor asserts that Blanchard's depreciation amount excluded any subcontractor or prime contractor mark-ups and that Blanchard and Fluor incurred and should have received overhead and profit for the depreciation costs disallowed under the profits and overhead categories above (first amended compl. ¶¶ 68, 71).

During the audit, Blanchard's then-chief financial officer (CFO) communicated with the DCAA auditor, explaining Blanchard's decision to use depreciation to value the costs of the generators and equipment (although we have not found a copy of the communication in the Rule 4 files, but the agency's answer admits to the text of the communication incorporated in the complaint) (first amended compl. ¶ 39; answer ¶ 39). DCAA questioned why Blanchard did not use the rental rate for the equipment rather

than deriving the cost through depreciation (first amended compl. ¶ 39; answer ¶ 39). Blanchard asserted that it used depreciation over other approaches based on its "interpretation of the guidelines relating to contracts that are terminated for convenience by the government, our agreement and discussions with Fluor and discussions with our advisors" (first amended compl. ¶ 39; answer ¶ 39). But, Blanchard provided DCAA an estimate of the rental rate of $6,224,103 (a rate that Blanchard's current CFO attests to in an affidavit attached to appellant's brief) (first amended compl. ¶ 39; answer ¶ 39; app. resp., Dalys Johnson aff. ¶ 8). Fluor pleads that Blanchard "understated" its costs by using the lower depreciation-based settlement proposal of $3,370,768 instead of the $6 million rental rate (first amended compl. ¶ 41). Fluor alleges that Blanchard used depreciation as an approach that "best approximated the cost it would incur in disposing of the power equipment" (first amended compl. ¶ 40). Given that Blanchard's proposal used cost estimates, Fluor alleges that it considered the rental rates (and lower depreciation cost) as a basis for finding Blanchard's termination costs reasonable and for paying Blanchard's termination costs in July 2014 (first amended compl. ¶¶ 45-46).

DCAA recommended denial of Blanchard's equipment depreciation costs based on the requirements of the depreciation cost principle – FAR 31.205-11 (first amended compl. ¶ 58; R4, tab 8 at 180-81). DCAA acknowledged, "In reviewing the supporting documentation and inquiry with the subcontractor, we determined that the generators were shipped from the U.S. to Dubai and held in storage without being turned on for this subcontract" (R4, tab 8 at 181; *see* first amended compl. ¶¶ 37-38). Nevertheless, DCAA quoted FAR 31.205-11(c), which states that "allowable depreciation shall not exceed the amount used for financial accounting purposes, and shall be determined in a manner consistent with the depreciation policies and procedures followed in the same segment on non-government business" (R4, tab 8 at 180-81 (quoting FAR 31.205-11(c)); first amended compl. ¶ 58). DCAA found that Blanchard "including depreciation costs in excess of what they had recorded for financial accounting purposes caused this material noncompliance" (R4, tab 8 at 181; first amended compl. ¶ 62). Fluor's complaint states that Blanchard uses a declining balance depreciation method (not straight-line) for Federal tax purposes and "did not depreciate the equipment in its accounting records other than for tax purposes" (first amended compl. ¶¶ 58, 62; R4, tab 8 at 181).

Ultimately, Fluor reduced its termination proposal from $5,179,655 to $5,106,772 (first amended compl. ¶ 70 n.5; app. supp. R4, tab 46 at 1). In 2018, the Corps of Engineers paid Fluor $2,166,331 (the amount recommended by DCAA as allowable), leaving an unpaid and disputed amount of $2,940,441 (first amended compl. ¶¶ 70 n.5, 82; app. supp. R4, tab 46 at 2; R4, tab 3 at 95). On September 18, 2018, Fluor requested a contracting officer's determination regarding the unpaid and disputed amount (first amended compl. ¶ 77; answer ¶ 77; notice of appeal at 2 (ASBCA No. 62550)). The Corps of Engineers never responded and Fluor appealed the deemed denial to the Board on May 22, 2020 (ASBCA No. 62550) (first amended compl. ¶ 6). On July 30, 2020, the Corps of Engineers' contracting officer adopted the reasoning of DCAA's audit report

and issued a final decision denying Fluor's $2,940,441 claim (first amended compl. ¶ 7; R4, tab 3). On September 9, 2020, Fluor appealed the contracting officer's final decision (ASBCA No. 62672).

In its complaint, Fluor noted that its original termination settlement proposal had included certain estimated costs because, for example, Blanchard had not disposed of the generators and other equipment (first amended compl. ¶ 50). In its complaint and in the Johnson Affidavit attached to its opening brief, Fluor now provides new claim amounts based on Blanchard's actual costs (which it did not have at the time of its termination settlement proposal) as evidence that its settlement with Blanchard was reasonable (first amended compl. ¶¶ 61-66; Johnson aff. ¶¶ 5-7.7). Comparing these January 2021 actual costs with the prior settlement proposal and the Corps of Engineers' payment of those costs renders the following table:

| Cost Element | Jan. 2021 Actual Costs | Settlement Proposal | RESULTS OF AUDIT | |
| --- | --- | --- | --- | --- |
| | | | Questioned | Allowed & Paid |
| Material/Equipment | $1,766,347 | $675,513 | - | $675,513 |
| Shipping and Storage | 312,366 | 367,824 | 161,692 | 206,132 |
| Technician (Labor) | 11,182 | 11,182 | - | 11,182 |
| Equipment Depreciation | 0 | 1,634,527 | 1,634,527 | - |
| Overhead | 316,977 | 316,977 | 316,977 | - |
| Cost of Money | 883,464 | 112,374 | 112,374 | - |
| Profit | 231,406 | 231,406 | 148,909 | 82,496 |
| Settlement Expenses | 20,965 | 20,965 | - | 20,965 |
| **Total** | **$3,542,706** | **$3,370,768** | **$2,374,479** | **$966,289** |

(First amended compl. ¶¶ 61-67, 76; Johnson aff. ¶¶ 5-7.7; R4, tab 8 at 165, 178) Although Fluor's complaint and the Johnson affidavit both include the new $1,766,347 in actual material/equipment costs, only the complaint indicates that these "costs were slightly offset by a net gain of $586,000 resulting from the eventual sale of the generators;" the Johnson affidavit's calculation does not discuss this potential mitigating amount (first amended compl. ¶ 61). The Corps of Engineers' answer denies Fluor's allegations regarding the increased costs to the material/equipment and cost of money (answer ¶¶ 50, 61-66, 82).

When the Corps of Engineers filed its answer to the amended complaint, it also moved to partially dismiss the appeals. Fluor cross-moved for summary judgment.

<u>DECISION</u>

I.    *Fluor Has Plausibly Pleaded a Claim for its Subcontractor Settlement Costs*

The Corps of Engineers moves to partially dismiss Fluor's complaint for failure to state a claim for recovery of its subcontractor Blanchard's costs of supplying generators and other equipment. The Corps of Engineers asserts that FAR Part 31's cost principles apply because the Contract used termination provisions prescribed by FAR Part 49 (including the requirement to consider the cost principles in assessing termination costs) and that they preclude Fluor from obtaining the recovery it seeks. Despite conceding the applicability of FAR Part 49 in its complaint and flowing down a FAR Part 49 termination clause into the Subcontract, Fluor asserts in its response to the government's motion that it entered a commercial items subcontract with Blanchard resulting in the applicability of FAR Part 12 and inapplicability of the cost principles. As discussed below, we disagree. However, even though FAR Part 12 does not apply, when we apply the cost principles under FAR Part 31 and the fairness principle under FAR Part 49, Fluor has plausibly pleaded a claim to recover its subcontractor termination settlement costs.

A.    *Standard of Review*

The Board's rules do not include an equivalent to FED. R. CIV. P. 12(b)(6) or 12(c), but we permit motions to dismiss for failure to state a claim upon which relief may be granted. *Kamaludin Slyman CSC*, ASBCA No. 62006, 21-1 BCA ¶ 37,849 at 183,789. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [complaint] pleads factual content that allows the [Board] to draw the reasonable inference that the [respondent] is liable for the misconduct alleged." *Id*. Plausibility requires more than alleging facts "merely consistent with" the requested relief. *Id*.; *Kamaludin Slyman*, 21-1 BCA ¶ 37,849 at 183,789. However, we look at the facts and do "not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

The Board "must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013). We are not limited to the four-corners of the complaint, but look also to the contractor's or government's claim – the wellspring of our jurisdiction – and look at "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned," as appropriate. 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1357 (3d ed.); *see also A&D Auto Sales, Inc. v.*

8

*United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014); *Kamaludin Slyman*, 21-1 BCA ¶ 37,849 at 183,789.[3]

        B.      *Fluor's Termination Costs, Including its Subcontractor Blanchard's Costs, Are Subject to the Standards in FAR Part 49, Not FAR Part 12*

"A contractor's entitlement to compensation in a termination for convenience is determined by those applicable clauses of the FAR that are incorporated into the contract at issue." *Campus Mgmt. Corp.*, ASBCA No. 59924, 17-1 BCA ¶ 36,727 at 178,876. Here, as noted above, the Contract incorporates two termination clauses deriving from FAR Part 49: (1) FAR 52.249-1, TERMINATION FOR THE CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SHORT FORM) (APR 1984); and (2) FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004) (first amended compl. ¶ 72; R4, tab 2 at 31). As pertinent here, the long-form termination for convenience clause (52.249-2) states: "The cost principles and procedures of part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause." FAR 52.249-2(i); FAR 49.113 ("The cost principles and procedures in the applicable subpart of part 31 shall, subject to the general principles in 49.201, (a) be used in asserting, negotiating, or determining costs relevant to termination settlements under contracts with other than educational institutions, . . ."). Unlike the FAR clauses in the Contract, the commercial items clause excludes the use of the cost principles in assessing terminations: "The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose." FAR 52.212-4(*l*). Typically, "the commercial items clause's recovery is price based, while the standard clause's recovery is cost based." *ESCGov, Inc.*, ASBCA No. 58852, 17-1 BCA ¶ 36,772 at 179,186.

Fluor seeks to avoid application of FAR Part 31, asserting that its Subcontract purchased commercial items from Blanchard and, therefore, the commercial items termination clause governs Fluor's recovery of its termination costs here (app. resp. at 13-15). However, the Contract does not include the commercial items terms and conditions clause (FAR 52.212-4) with the commercial items termination provision. Nor

---

[3] Although the government submitted an answer here and was certainly not precluded from doing so, we do wish to underscore that it had the option of requesting a delay in filing that pleading until after we had resolved the pending motion. Under the Federal Rules of Civil Procedure (which do not bind us, but are helpful), typically "the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion." *Fed. Contracting, Inc. v. United States*, 128 Fed. Cl. 788, 797 (2016) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1346 (3d ed.)); FED. R. CIV. P. 12(a)(4)(A); RCFC 12(a)(4)(A).

did Fluor include the commercial items termination provision in its Subcontract with Blanchard. Instead, Fluor included the short form of the FAR Part 49 fixed-price termination provision, which states terminations for convenience "shall be in accordance with Part 49 of Federal [A]cquisition [Regulation] in effect on the date of the award or this contract." (First amended compl. ¶ 15 (quoting DFARS 52.249-1); app. supp. R4, tab 13 at 318 (same)) Indeed, in contrast to its briefs, Fluor's complaint explicitly acknowledges, "FAR Part 49 applies to the termination of Task Order 10 of the Contract" (first amended compl. ¶ 22).[4]

Fluor counters that the Contract required Fluor to flow down, as it did, two Commercial Items provisions to any commercial items subcontract: (1) FAR 52.244-6, SUBCONTRACTS FOR COMMERCIAL ITEMS (APR 2010); and (2) DFARS 252.244-7000, SUBCONTRACTS FOR COMMERCIAL ITEMS AND COMMERCIAL COMPONENTS (DOD) CONTRACTS (AUG 2009) (first amended compl. ¶¶ 20, 59; R4, tab 2 at 30-31; app. supp. R4, tab 13 at 423; app. resp. at 15 n.1). And Fluor notes that the Corps of Engineers' answer admitted that these clauses were in the Contract and Blanchard provided commercial services (answer ¶ 59; app. resp. at 13). However, neither clause includes a termination provision nor requires a prime contractor to flow down FAR 52.212-4 (which includes the commercial items termination provision). To the contrary, that FAR clause specifically permits a prime contractor to "flow down to subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations." FAR 52.244-6(c)(2). And, as noted above, regardless of Fluor's current characterization of the Subcontract, Fluor flowed down the standard short form termination provision to Blanchard (FAR 52.249-1) instead of the commercial items termination provision.

---

[4] Fluor's concession in its complaint that FAR Part 49 applies and Fluor's choice of using the FAR Part 49 termination provision in the Subcontract instead of FAR Part 12's termination provision distinguishes this appeal from *JKB Solutions & Services, LLC v. United States*, 18 F.4th 704 (Fed. Cir. 2021), where the Federal Circuit did not apply the termination provision in the contract. The footnotes tell the story of that appeal. There, for purposes of summary judgment, the government did not contest that the contract provided non-commercial services rather than commercial items (which, by definition, included commercial services). *Id*. at 710 n.2. Because the government conceded the contract did not provide commercial items, the Federal Circuit concluded that the commercial items termination provision incorporated in the contract did not apply. *Id*. at 706-08. The contractor asserted that it could pursue breach damages without any termination provision. The Court of Federal Claims, however, never assessed whether the *Christian* doctrine required incorporation of another termination for convenience clause and the Federal Circuit remanded for consideration of that issue. *Id*. at 707, 708 n.1 (discussing *G.L. Christian Assocs. v. United States*, 312 F.2d 418 (Ct. Cl. 1963)).

10

Nonetheless, Fluor asserts that our decision in *SWR* should govern, but that decision (as Fluor recognizes) related to a termination of a commercial items prime contract that included FAR 52.212-4, not a prime contract or subcontract without it. *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,204 ("The contract also contained FAR 52.212-4 . . . ."). Fluor's complaint conceded the applicability of FAR Part 49 and the Contract and Subcontract both used termination provisions derived from FAR Part 49 (not FAR Part 12). Fluor cannot now avoid FAR Part 49's application of the FAR Part 31 cost principles in assessing its termination settlement costs. Ultimately, we must apply the termination provisions in the Contract, which does not incorporate the Commercial Items termination provision but instead the standard termination provisions and principles of FAR Part 49. *Campus Mgmt. Corp.*, 17-1 BCA ¶ 36,727 at 178,876.

C.      *Notwithstanding the Applicability of FAR Parts 31 and 49 to This Contract, Fluor Has Pleaded a Claim for Blanchard's Termination Costs Relating to the Generators and Equipment*

A termination for convenience of a task order in a non-commercial items contract effectively converts a fixed-price contract into a cost-reimbursement contract, which entitles a contractor to recover allowable costs and reasonable profit. *Envtl. Safety Consultants, Inc.*, ASBCA No. 58343, 15-1 BCA ¶ 35,906 at 175,522; *Best Foam Fabricators, Inc. v. United States*, 38 Fed. Cl. 627, 638 (1997). "The regulations provide that the cost principles in Part 31.2 of the Federal Acquisition Regulations ('FAR') are to 'be used in asserting, negotiating, or determining costs relevant to termination settlements,' but they are subject to the general fairness principles of section 49.201(a)." *Nicon, Inc. v. United States*, 331 F.3d 878, 885 (Fed. Cir. 2003) (quoting FAR 49.113(a)); *Best Foam*, 38 Fed. Cl. at 638 ("Allowability is determined using the cost principles set forth in FAR part 31, subject to the general principle that the contractor should be compensated fairly for the work terminated."). FAR Part 31's cost principles permit recovery of "allowable" costs that comply "with all of the following requirements: (1) Reasonableness. (2) Allocability. (3) [Cost Accounting Standards or generally accepted accounting principles]. (4) Terms of the contract. (5) Any limitations set forth in this subpart." *Geren v. Tecom, Inc.*, 566 F.3d 1037, 1040 (Fed. Cir. 2009) (quoting FAR 31.201-2).

FAR 49.201(a) states, "A settlement should compensate the contractor fairly for the work done and the preparations made for the terminated portions of the contract, including a reasonable allowance for profit." FAR 49.201(a); *SWR, Inc.*, 15-1 BCA ¶ 35,832 at 175,223. "The standard for termination settlement proposals recognizes . . . that the settlement may need to be based upon estimates." *Phoenix Data Solutions LLC*, ASBCA No. 60207, 18-1 BCA ¶ 37,164 at 180,922. "The use of business judgment, as distinguished from strict accounting principles, is the heart of a settlement." FAR 49.201(a); *see also Codex Corp. v. United States*, 226 Ct. Cl. 693, 698 (1981)

11

(reconciling "the strict standard of allowable costs . . . and the fairness concept . . . is a matter primarily within the discretion of the Board of Contract Appeals"). "Although the burden is on the contractor to show entitlement to a larger settlement amount, . . . the overall purpose of a termination for convenience settlement is to fairly compensate the contractor and to make the contractor whole for the costs incurred in connection with the terminated work." *Nicon*, 331 F.3d at 885.

> 1. *Fluor Has Plausibly Alleged a Claim Based on the Termination Cost Principle and Need Not Rely on the Depreciation Cost Principle*

Here, the Corps of Engineers' motion to dismiss relates to the fifth element of allowability – limitations in FAR Part 31. FAR 31.201-2(a)(5). In particular, the Corps of Engineers asserts that Fluor has failed to plausibly plead a claim for recovery of Blanchard's costs for the generators and other equipment because Blanchard's termination settlement proposal estimated those costs using the depreciation cost principle – FAR 31.205-11 (gov't mot. at 7-9). And, because Blanchard estimated its costs based on the depreciation cost principle (FAR 31.201-11), the Corps of Engineers asserts that Fluor may only recover its subcontractor termination settlement costs with Blanchard under that cost principle or not at all (gov't mot. at 6-9; gov't reply at 2-5).

As reflected in Fluor's complaint, strict adherence to the depreciation cost principle would result in no recovery, as DCAA recommended and the contracting officer concluded (first amended compl. ¶¶ 7, 58; R4, tab 3; tab 8 at 180-81). For a subcontractor not governed by the Cost Accounting Standards such as Blanchard, "allowable depreciation shall not exceed the amount used for financial accounting purposes, and shall be determined in a manner consistent with the depreciation policies and procedures followed in the same segment on non-Government business." FAR 31.205-11(c). Fluor acknowledges that Blanchard calculated its generator costs using straight-line depreciation, but Blanchard uses the declining balance depreciation method for Federal tax purposes, and "did not depreciate the equipment in its accounting records other than for tax purposes" (first amended compl. ¶¶ 58, 62; R4, tab 8 at 181). Thus, Blanchard's termination settlement proposal that calculated generator costs using depreciation was inconsistent with its normal depreciation policies and procedures.[5]

---

[5] The Corps of Engineers relies on a General Services Board of Contract Appeals (GSBCA) decision, which applied the depreciation cost principle (FAR 31.205-11) to bar a contractor's attempt to recover on property that had already been fully depreciated. *Herman B. Taylor Constr. Co. v. Gen. Servs. Admin.*, GSBCA No. 15421, 03-2 BCA ¶ 32,320 at 159,906. In *Taylor Construction*, the GSBCA dealt with a different issue under the depreciation cost principle – that a contractor cannot recover a rental charge for fully depreciated equipment without the government's agreement. *Id.* (citing FAR 31.205-11(1) and *Union Boiler Works, Inc. v. Caldera*, 156 F.3d 1374, 1376 (Fed. Cir. 1998)).

Fluor counters, however, that it is not relying on the depreciation cost principle (which Blanchard merely used to estimate its costs) but the termination cost principle – FAR 31.205-42 – and the Contract's Termination for Convenience contract clause (FAR 52.249-2) that permits recovery of costs from subcontractor settlements (app. resp. at 15-16; app. reply at 3-6). The termination cost principle states, "Subcontractor claims, including the allocable portion of the claims common to the contract and to other work of the contractor, are generally allowable." FAR 31.205-42(h). The Contract's long-form termination for convenience clause permits Fluor to recover "[t]he cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract . . . ." FAR 52.249-2(g)(2)(ii). "A prime seeking to recover the costs of settling with a sub under the 'settled and paid' clause . . . need not strictly prove the allowability, reasonableness, and allocability of all of the sub's costs." *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1252 (10th Cir. 1999). The FAR also states that the termination contracting officer must evaluate whether the settlement "was arrived at in good faith, is reasonable in amount, and is allocable to the terminated portion of the contract . . . ." FAR 49.108-3(c). Thus, allowability of a contractor's costs in settling a subcontractor's claim depends on "the reasonableness and prudence of the settlement, including the competence and good faith with which the negotiations were conducted[,] and the adequacy of the information upon which the settlement was based." *Gen. Dynamics Land Sys., Inc.*, ASBCA No. 52283, 02-1 BCA ¶ 31,659 at 156,411.

Fluor alleges (and the Corps of Engineers admits) that Blanchard informed DCAA during the audit that Blanchard had estimated its costs using the depreciation principle and Blanchard would have used other methods to calculate its costs had it believed it could (first amended compl. ¶ 39; answer ¶ 39). Blanchard informed DCAA those other methods (such as charging the rental rate or using declining-balance depreciation) would have resulted in higher cost estimates (first amended compl. ¶ 39; answer ¶ 39). Fluor alleges that Blanchard used its estimate mainly because it more closely approximated what it expected to cost to dispose of the generators and other equipment (first amended compl. ¶ 40). Even DCAA acknowledged that Blanchard had purchased and timely shipped the equipment to the Middle East, where it sat ready for performance prior to termination (R4, tab 8 at 181; first amended compl. ¶¶ 37-38). Indeed, Fluor alleges that Blanchard's actual costs of disposing of the equipment closely approximated its estimated costs provided to DCAA (first amended compl. ¶¶ 61-66). Fluor alleges that it acted reasonably in settling with Blanchard because the actual costs incurred by Blanchard match the amount Fluor and Blanchard had already provided the Corps of

We note first that GSBCA cases are not binding upon us except to the degree that we find them to be persuasive authority. Moreover, here, the equipment was new and had not been depreciated, so this particular aspect of the cost principle is not relevant to these appeals. Nor did the costs at issue relate to settlement of a subcontractor's costs, as here.

13

Engineers and DCAA in the estimated costs in the termination settlement proposal (first amended compl. ¶¶ 50, 61-66).

Based on all these allegations, we believe that Fluor has plausibly pleaded a claim for recovery of its subcontractor costs even though Fluor seeks to demonstrate the reasonableness of recovery based on the actual increased costs incurred rather than the estimates provided in Blanchard's termination settlement proposal. *Johnson*, 574 U.S. at 11; *Phoenix Data*, 18-1 BCA ¶ 37,164 at 180,922 (noting that termination settlements may be "based on estimates"); *Raytheon Co.*, ASBCA No. 57743 *et al.*, 17-1 BCA ¶ 36,724 at 178,847 ("An increase (or reduction) on appeal in the amount claimed does not constitute a new claim under the CDA as long as the nature of the claim and basic operative facts are essentially the same."), *aff'd*, 940 F.3d 1310 (Fed. Cir. 2019). Termination settlements must balance strict application of the cost principles with assuring fairness to the contractor terminated for convenience. *Nicon*, 331 F.3d at 885; FAR 49.201(c) ("Cost and accounting data may provide guides, but are not rigid measures, for ascertaining fair compensation."). Fluor plausibly alleges Blanchard incurred costs for obtaining, shipping, and storing the equipment, and Fluor should not shoulder the costs of the government's convenience termination decision for following the agency's direction to settle these costs with its subcontractor. *Nicon*, 331 F.3d at 885; *Jacobs Eng'g Grp., Inc. v. United States*, 434 F.3d 1378, 1381 (Fed. Cir. 2006) ("A contractor is not supposed to suffer as the result of a termination for convenience of the Government, nor to underwrite the Government's decision to terminate." (Citation omitted)); (R4, tab 6 at 144 (termination letter reminding Fluor of obligation to "promptly" settle with subcontractors)) Fluor should be permitted to provide evidence to prove its well-pleaded allegations.

### 2. Fluor Has Plausibly Alleged Notice to the Agency Regarding its Subcontractor Settlement

The Corps of Engineers asserts that, even if Fluor was permitted to show the reasonableness of its settlement with its subcontractor Blanchard, Fluor cannot recover because Fluor failed to obtain contracting officer approval under FAR 49.108-3 prior to paying its subcontractor to settle its termination proposal (gov't reply at 5-6 n.6). FAR 49.108-3(b)(2) states that a termination contracting officer "shall require that . . . [t]he prime contractor submit, for approval or ratification, all termination settlements with subcontractors." FAR 49.108-3(b)(2); *Parson Global Servs., Inc. ex rel. Odell Int'l, Inc. v. McHugh*, 677 F.3d 1166, 1172 (Fed. Cir. 2012) (recognizing that FAR 49.108-3 "allows prime contractors to settle with subcontractors and then submit these settlements to the TCO for approval"); *Lockheed Martin Corp. v. England*, 424 F.3d 1199, 1201 (Fed. Cir. 2005) (noting that a prime contractor's proposed termination settlement with a subcontractor would not "become final until approved or ratified by the Termination Contracting Officer").

14

In December 2013, Fluor provided Blanchard's 474-page termination settlement proposal as part of Fluor's termination proposal, listing the total amount of Blanchard's settlement proposal of $3,370,768 as "settlements with subcontractors" (first amended compl. ¶ 42; app. supp. R4, tab 13.2 at 4, tab 15 at 1, tab 13 (Blanchard termination settlement proposal)). Fluor has adequately alleged that Blanchard's termination settlement proposal provided the Corps of Engineers with sufficient information to meet the requirements of FAR 49.108-3. *H.J. Lyness Constr., Inc. v. United States*, 121 Fed. Cl. 287, 295 (2015) (denying claim based on FAR 49.108-3 where "[t]he documentation submitted to GSA at the time of the audit was insufficient to support the award of subcontractor settlement costs, and Plaintiff has failed to provide the Court with any additional documentation that could supplement the record on the issue"), *aff'd*, 652 F. App'x 972 (Fed. Cir. 2016). Indeed, as noted above, DCAA's audit report (which was not issued until December 2015 – two years after Fluor submitted its termination settlement proposal) verified that Blanchard incurred costs by purchasing, shipping, and housing the generators in the Middle East in preparation for this Contract (R4, tab 8 at 181; first amended compl. ¶¶ 37-38).

Moreover, Fluor has alleged that it entered a settlement agreement with Blanchard in July 2014 for the subcontractor's termination costs eight months after submitting its termination settlement proposal to the Corps of Engineers in December 2013 (first amended compl. ¶ 46). Indeed, Fluor alleged that it acted reasonably by not awaiting the two-year-long DCAA audit by "promptly" settling as the Corps of Engineers directed Fluor when the agency terminated the Task Order in May 2013 (and as Fluor promised Blanchard in the Subcontract) (first amended compl. ¶ 16; app. supp. R4, tab 13 at 330; R4, tab 6 at 144). Thus, Fluor has plausibly pleaded that it met its obligation under FAR 49.108-3 and has appealed the contracting officer's decision denying recovery of its settlement with Blanchard. Whether Fluor should recover its subcontractor settlement costs remains a question of disputed fact that we look at next.

II.    *The Current Record Does Not Establish Fluor's Costs and, Thus, We Deny Summary Judgment in its Favor*

A.    *Standard of Review*

Board Rule 7(c) permits summary judgment motions and "looks to Rule 56 of the Federal Rules of Civil Procedure for guidance." ASBCA Rule 7(c)(2). FED. R. CIV. P. 56 requires granting "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

15

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Finally, on summary judgment, we apply the "substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252.

B. *There is a Genuine Dispute of Material Fact Regarding the Reasonableness and Amount of Costs Relating to Fluor's Settlement with Blanchard*

For convenience termination costs, the "claimant bears the burden of proving the fact of loss with certainty, as well as the burden of proving the amount of loss with sufficient certainty so that the determination of the amount of damages will be more than mere speculation." *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 767 (Fed. Cir. 1987) (quoting *Willems Indus., Inc. v. United States*, 295 F.2d 822, 831 (Ct. Cl. 1961)); *Envtl. Safety Consultants*, 15-1 BCA ¶ 35,906 at 175,522. Fluor's summary judgment motion and the extant record do not suffice to establish an absence of a genuine dispute of material fact as to the reasonableness and amount of Fluor's costs in settling with Blanchard.[6]

Fluor asserts in its complaint that it paid Blanchard $3,116, 991.20 to settle, but the record includes nothing to support that allegation (first amended compl. ¶ 46). Fluor relies on the Corps of Engineers' citation of Fluor's complaint as the basis for finding this fact undisputed (app. resp. at 18; gov't mot. at 4). The agency clearly treated that fact as undisputed only for purposes of its motion to dismiss, where it "must accept well-pleaded factual allegations as true" to prevail. *Kellogg Brown & Root*, 728 F.3d at 1365. In fact, the Corps of Engineers' answer denies, for lack of information, the allegation that Fluor made a settlement payment to Blanchard (answer ¶ 46). Fluor must do more than simply rely on its pleadings to demonstrate the fact and amount of settlement, particularly where the Corps of Engineers' answer denies it. While Blanchard's estimated costs in its termination settlement proposal and allegation of subcontractor settlement and payment assisted Fluor in surviving dismissal, the current record lacks sufficient evidentiary proof to demonstrate an undisputed material fact necessary for summary judgment.

---

[6] Typically, Fed. R. Civ. P. 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). Because Fluor has failed to show an absence of a genuine dispute of material fact, the Corps of Engineers' has prevailed despite its unsupported responses that "upon information and belief" Fluor's allegations were not true.

Additionally, the record is unclear whether Fluor acted reasonably in settling with Blanchard for the alleged amount. "Cost reasonableness is a 'question of fact.'" *Kellogg Brown & Root*, 728 F.3d at 1360 (quoting *Gen. Dynamics Corp. v. United States*, 410 F.2d 404, 409 (Ct. Cl. 1969)). "The standard of assessing reasonableness is flexible" and we "consider many fact-intensive and context-specific factors." *Id.* at 1360 (citing FAR 31.201-3). Fluor has alleged that it acted reasonably in settling with Blanchard because Blanchard's actual costs, including costs of capital, justified the estimates provided in the termination settlement proposal provided to DCAA (first amended compl. ¶¶ 61-66). For factual support, Fluor relies solely on an affidavit of Blanchard's current chief financial officer to explain the actual costs Blanchard incurred in disposing of the generators and other equipment (app. resp., Johnson aff. ¶¶ 5-7.7). However, the record includes no back-up documentation that is necessary to justify the reasonableness of these actual incurred costs. "A reference in a claim is inadequate to constitute a showing sufficient that no reasonable trier of fact could find other than for appellant." *Orbital Sciences Corp.*, ASBCA No. 50171, 00-1 BCA ¶ 30,860 at 152,344. Fluor must provide more than just its allegations in its claim or complaint and may not simply rely on alleged costs "asserted under oath by a company official" but must provide some documentation supporting its termination costs. *First Division Design, LLC*, ASBCA No. 60049, 18-1 BCA ¶ 37,201 at 181,102.

Moreover, Fluor's complaint alleges that Blanchard's actual incurred "costs were slightly offset by a net gain of $586,000 resulting from the eventual sale of the generators;" but the affidavit's calculation does not discuss this potential mitigating amount and whether it impacts Blanchard's actual costs (first amended compl. ¶ 61). Even a terminated party has a duty of mitigation. *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1375 (Fed. Cir. 2005) ("Mitigation is appropriate where a reasonable person, in light of the known facts and circumstances, would have taken steps to avoid damage."). If Blanchard actually mitigated these costs, then that potentially impacts the reasonableness of any settlement and the agency's liability to reimburse Fluor.

Ultimately, at this time, Fluor has failed to provide sufficient evidentiary proof to demonstrate an absence of a genuine dispute of material fact. In response to the agency's motion to dismiss Fluor stated, "There is a genuine issue of material fact regarding the actual costs incurred by Blanchard resulting from the termination for convenience" (app. resp. at 12). We agree, and think this statement equally applies to Fluor's motion for summary judgment. Fluor may very well have evidence to show that it acted reasonably, but Fluor neither provided undisputed evidence with its summary judgment motion nor has it yet included such evidence in any supplements to the Rule 4 file. Thus, we deny Fluor's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we deny the Corps of Engineers' motion to partially dismiss Fluor's appeal and deny Fluor's motion for summary judgment.

Dated: March 29, 2022

DANIEL S. HERZFELD
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62550, 62672, Appeals of Fluor Intercontinental, Inc., rendered in conformance with the Board's Charter.

Dated: March 29, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

18